IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| George William Greene, ) | |
| ) | Cr. No. 3:17-0152 |
| Movant, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER AND OPINION** |
| United States of America, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Movant George William Greene is a federal inmate currently housed at FCI-Farton in Farton, New Jersey. This matter is before the court on Movant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.

FACTS AND PROCEDURAL HISTORY

On May 21, 2007, Movant pleaded guilty in a separate action to an indictment charging conspiracy to manufacture, possess with intent to distribute, and to distribute 50 grams or more of methamphetamine, or 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. § 846 (Count 1). See United States v. Greene, Cr. No. 3:06-452. Movant was sentenced on March 4, 2008, to incarceration for a total term of 151 months, to be followed by a term of supervised release for 5 years. Judgment was entered on March 5, 2008.

Movant was released to supervision on January 9, 2015. On September 8, 2016, the United States Probation Office (USPO) petitioned the court to issue a warrant for Movant's arrest. The USPO informed the court that Movant had violated the conditions of his supervised release because (1) the Lexington County, South Carolina, Magistrate had issued a warrant for domestic violence that allegedly involved Movant assaulting his wife; and (2) Movant had tested positive for and/or admitted to methamphetamine use on April 22, 2016; June 10, 2016; and July 22, 2016. A warrant

was issued on September 9, 2016.

On September 23, 2016, Movant was arrested at a house in Matthews, South Carolina, on the state domestic violence warrant. A protective sweep of the house by law enforcement revealed firearms and ammunition, which were seized. Movant was convicted of domestic violence in the third degree on October 3, 2016, and was sentenced to 30 days of incarceration. Movant thereafter was arrested on his federal warrant on October 26, 2016.

On November 1, 2016, Movant appeared before a Magistrate Judge for a detention hearing. The Magistrate Judge imposed a $100,000 secured bond, but stated that she would suspend the financial obligation of the bond if Movant was admitted into an inpatient drug treatment facility. A bed for Movant was located at a drug treatment facility in Charlotte, North Carolina. On November 14, 2016, the Magistrate Judge released Movant on an unsecured $100,000 bond with special conditions, effective only for the duration of Movant's inpatient treatment. On December 12, 2016, Movant again appeared before the Magistrate Judge and was released on a $20,000 corporate security bond with the condition of location monitoring with home detention.

On January 24, 2017, the USPO petitioned the court for a warrant and revocation of bond based on the following violations: (1) Movant's use of methamphetamine, amphetamine, and morphine, to which he tested positive on January 12, 2017 and January 17, 2017; (2) Movant's removal of his GPS transmitter from his leg without authorization on January 23, 2017; and (3) Movant's absconding supervision commencing January 23, 2017. A warrant was issued on January 24, 2017. Movant was arrested on February 8, 2017, in Gaston, South Carolina, where he was living in a shed. A protective sweep of the shed and Movant's vehicle revealed two firearms, various ammunition, ballistic body armor, two electric digital scales, pills, marijuana, 4.5 grams of

methamphetamine, and numerous new small plastic baggies. ECF No. 1152, 4 in Cr. No. 3:06-452.

On February 24, 2017, the grand jury issued an information in the within matter charging Movant with two counts of felon in possession of weapons and ammunition, one on September 23, 2016 and the other on February 8, 2017, in violation of 18 U.S.C. §§ 922(g), 924(a)(2), and 924(e). Movant pleaded guilty to both counts on March 21, 2017. The court sentenced Movant on August 29, 2017, to the custody of the Bureau of Prisons for 87 months as to each of Counts 1 and 2, to be served concurrently, to be followed by a term of supervised release for 3 years as to each of Counts 1 and 2, to be served concurrently.

Also on August 29, 2017, Movant's supervised release in Cr. No. 3:06-452 was revoked. In that case, Movant was committed to the custody of the Bureau of Prisons for 10 months, to be followed by a term of supervised release for 3 years. The court ordered that the sentences in both cases run concurrently with each other. Judgment was entered in both the instant action and Cr. No. 3:06-452 on September 1, 2017.

On December 21, 2019, the United States Supreme Court determined that, in a prosecution under § 922(g) and § 924(a)(2), the government has the burden of proving both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.[1] See Rehaif v. United States, 139 S. Ct. 2191, 2200 (2019). On March

---

[1] Under § 922(g), it is unlawful for any person who, among other things, "has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Under § 924(a)(2), "Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." Rehaif requires that the government prove a defendant knows his § 922(g) status, e.g., he was a felon in possession of a firearm, but does not require that the government prove the defendant knew his status put him in a category of persons legally prohibited from possessing a

3

25, 2020, the Court of Appeals for the Fourth Circuit applied the plain-error test to determine whether a Rehaif error not raised before the district court is susceptible to appellate review.[2] The Fourth Circuit held that "a standalone Rehaif error satisfies plain error review because such an error is structural, which per se affects a defendant's substantial rights." United States v. Gary, 954 F.3d 194, 200 (4th Cir. 2020).[3] According to the Fourth Circuit, "Gary did not knowingly and intelligently plead guilty because he was not fully informed during his plea colloquy of the elements the government had to prove to convict him of the § 922(g) offenses, and . . . this type of error—this denial of due process—is a structural error that requires the vacatur of Gary's guilty plea and convictions." Gary, 954 F.3d at 201.

Movant filed the within § 2255 motion on May 4, 2020, seeking, among other things, to vacate his conviction and sentence in light of Rehaif and Gary. On May 11, 2020, the government moved to stay Movant's § 2255 motion on the grounds that the government was seeking an en banc

---

firearm or ammunition. See United States v. Jackson, Cr. No. 3:17-810-CMC, 2021 WL 694848, at *9 (D.S.C. Feb. 23, 2021) (collecting cases).

[2] Pursuant to Fed. R. Crim. P. 52(b), "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." To establish eligibility for plain-error relief, "a defendant must satisfy three threshold requirements. First, there must be an error. Second, the error must be plain. Third, the error must affect 'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.' If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'" Greer II, 141 S. Ct. at 2096-97 (quoting Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904-05 (2019) (internal citations omitted)).

[3] "[C]ertain errors, termed 'structural errors,' might 'affec[t] substantial rights' regardless of their actual impact on an appellant's trial." United States v. Marcus, 560 U.S. 258, 263 (2010). "'[S]tructural errors'" are "'a very limited class'" of errors that affect the 'framework within which the trial proceeds,'. . . such that it is often 'difficul[t]' to "asses[s] the effect of the error." Id. (quoting cases) (internal citations omitted),

4

decision in Gary and the Fourth Circuit had not issued its mandate. The court granted the government's motion on May 11, 2020. The Fourth Circuit denied an en banc hearing on July 7, 2020. The government filed a petition for writ of certiorari to the Supreme Court, which was granted on January 8, 2021. Gary was consolidated on appeal with United States v. Greer, 798 F. App'x 483 (11th Cir. 2020) ("Greer I"). Contrary to Gary, the Eleventh Circuit had held that Greer, who had been convicted on a § 922(g)(1) charge after a jury trial, failed to show that the Rehaif error reflected in the jury charges affected his substantial rights.

On June 14, 2021, the Court issued its opinion in Greer v. United States, 141 S. Ct. 2090 (2021) ("Greer II"). In reviewing the district court proceedings in Gary and Greer I, the Court found that Rehaif errors occurred and that the errors were plain, thus satisfying the first two prongs of the plain error test. However, the Court determined that, as a general matter, a felon knows he is a felon, and, "if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a 'reasonable probability' that, but for the Rehaif error, the outcome of the district court proceedings would have been different." Greer II, 141 S. Ct. at 2097. According to the Court, "the omission of a single element from a plea colloquy does not 'deprive defendants of basic protections without which a criminal [proceeding] cannot reliably serve its function as a vehicle for determination of guilt or innocence.'" Id. at 2100 (quoting Neder v. United States, 527 U.S.1, 8-9 (1999)). The Court affirmed Greer I and reversed Gary.

The court lifted the stay in the within action on June 21, 2021. The government filed its response in opposition to Movant's § 2255 motion as well as a motion for summary judgment on July 19, 2021. By order filed July 19, 2021, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if

5

he failed to respond adequately.  Movant filed no response to the government's motion.

## DISCUSSION

Movant asserts the following grounds for relief in his § 2255 motion:

GROUND ONE:  Denial of due process.  I did not knowingly or intelligently plead guilty to felon in possession of a firearm, because I was not told during my plea colloquy of all the elements the government had to prove to convict me of the 922g offenses.  I was never told the government had to prove that I knew I was not permitted to possess a firearm.

GROUND TWO: Violation of the 4th Amendment - unreasonable search and seizure. I was arrested twice on fugitive warrents.  Both times I was arrested outside someone else's house, and after I was in custody the Marshals searched the home.  I did not knowingly or inteligently plead guilty, because I was not told during my plea colloquy that these were improper searches.

ECF No. 37,4 (errors in original).

### Law/Analysis

Section 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Under § 2255(g),

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

>  (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>  (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

A.      Ground One - Rehaif Error

The government concedes that Movant timely raises this issue within one year after the Court decided Rehaif. ECF No. 53, 7. The government further accepts that Rehaif is retroactive on collateral review because Rehaif "altered the elements that must be proven to sustain a conviction under § 922(g), meaning that it narrowed the 'class of persons that the law punishes.'" ECF No. 53, 6 (quoting Welch v. United States, 136 S. Ct. 1257, 1267 (2016)). The government contends, however, that Movant procedurally defaulted his Rehaif claim because he failed to raise it on direct review. The court agrees.

In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. Id. at 493 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. Id. (citing Murray, 477 U.S. at 496).

In <u>Reed v. Ross</u>, 468 U.S. 1, 16 (1984)), the Court determined that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures." Citing to <u>United States v. Johnson</u>, 457 U.S. 537 (1982), <u>abrogated by</u> <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987),[4] the Court identified three situations in which a movant might assert that an attorney has a reasonable basis upon which to develop a legal theory:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may "overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." And, finally, a decision may "disapprov[e] a practice this Court arguably has sanctioned in prior cases." By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement. Cases falling into the third category, however, present a more difficult question. Whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct this Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how strong the available support is from sources opposing the prevailing practice.

---

[4] Prior to <u>Griffin</u>, the Court could make new rules concerning constitutional claims prospective only "'where the exigencies of the situation require such an application[.]'" <u>See</u> <u>Stovall v. Denno</u>, 388 U.S. 293, 297 (1967)(quoting <u>Johnson v. New Jersey</u>, 384 U.S. 719, 726-27 (1966) ("<u>Johnson I</u>")), <u>abrogated</u> <u>by</u> <u>United States v. Johnson</u>, 457 U.S. 537 (1982) ("<u>Johnson II</u>"). In <u>Stovall</u>, the Court determined that "the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved." <u>Stovall</u>, 388 U.S. at 297 (quoting <u>Johnson</u>, 384 U.S. at 728). Later, in <u>Johnson II</u>, the Court held that a decision of the Court construing the Fourth Amendment is to be applied retroactively. 457 U.S. at 562. In <u>Griffin</u>, the court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." 479 U.S. at 328

Other courts have found that the argument advanced in Rehaif was reasonably available to counsel. In Mujahidh v. United States, Case No. C19-1852JLR, 2020 WL 1330750 (W.D. Wash. Mar. 23, 2020), the district court determined that the issue in Rehaif was not "so novel" at the time of Mujahidh's plea and sentencing so as not to be been available to counsel. According to the district court, the Court of Appeals for the Ninth Circuit had previously rejected arguments regarding the government's need to prove the defendant's knowledge of his prohibited status to establish a violation of § 922(g). The district court noted that the issue raised in Rehaif had been litigated in numerous other jurisdictions, as well. Mujahidh 2020 WL 1330760, at *3 (citing cases). Further, the district court observed that "'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time.'" Id. at *3 (quoting Bousley v. United States, 523 U.S. 614, 623 (1998)). See also United States v. Dotstry, Case No. 16-CR-346 (SRN/HB), 2021 WL 2379478 (D. Minn. June 10, 2021); United States v. Sanders, Case Nos. 4:14cr91-RH-CAS, 4:17cv359-RH-CAS, 2020 WL 1876335 (N.D. Fla. Mar. 15, 2020).

Similarly, in United States v. Langley, 62 F.3d 602, 604-05 (4th Circuit), the Fourth Circuit rejected the argument that "Congress' insertion of the word 'knowingly' in § 924(a), as amended in 1986, mandates that the government must prove, in a § 922(g)(1) prosecution, not only that the defendant knowingly possessed, transported, shipped, or received the firearm, but also that he or she knew, at the time he or she knowingly possessed, transported, shipped, or received the firearm, of his or her prior felony conviction and the firearm's interstate nexus." Movant possessed the tools to raise the challenge that ultimately was successful in Rehaif. The court concludes Movant cannot show cause to excuse his procedural default.

Movant also cannot show prejudice. Movant was aware of his felony status because of his

9

prior conviction for conspiracy in Cr. No. 3:06-452. The judgment in Cr. No. 3:06-452 specifically stated that a condition of his supervised release was that he "shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon." ECF No. 621, 3 in Cr. No. 3:06-452. As the government notes, Rehaif would have had no effect on Movant's guilty plea because the government easily could have shown Movant knew of his prohibited status as a felon at the time he was found in possession of the firearms and ammunition giving rise to his guilty plea in Cr. No. 3:17-152 because of his drug conviction in Cr. No. 3:06-452.

Movant also cannot establish actual innocence by clear and convincing evidence. Movant presents no credible evidence demonstrating that he is actually innocent of the § 922 charges. To the contrary, at the plea colloquy and in interviews with the USPO, Movant admitted his possession of the weapons that were found in his possession. Movant's Ground One is without merit.

B.    Ground Two - Unreasonable Search and Seizure

The government asserts that Ground Two is procedurally defaulted because Movant failed to raise this issue either on direct review or within one year of his judgment becoming final. "A criminal conviction becomes final at the end of the appellate process – i.e., when the time for a direct appeal expires and the defendant has not noticed an appeal or, if the defendant pursues an appeal, when the time for filing a petition for certiorari expires." United States v. Oliver, 878 F.3d 120, 125 (4th Cir. 2017) (citing United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001)). A criminal defendant must file a notice of appeal in the district court within 14 days after the entry of judgment. Fed. R. App. P. 4(b)(1).

Judgment was entered in the within action on September 1, 2017. Movant did not file a notice of appeal. Therefore, Movant's judgment was final on September 15, 2017. Movant had until

October 15, 2018 to assert his claims in Ground Two by way of a § 2255 motion. Movant failed to do so, and has advanced no argument as to cause and prejudice or a miscarriage of justice. Movant's Ground Two is without merit.

## CONCLUSION

For the reasons stated, the government's motion for summary judgment (ECF No 54) is **granted**. Movant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (ECF No. 37) is **denied and dismissed**, with prejudice.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly, the court **denies** a certificate of appealability.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

October 13, 2021